UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| ESTEL J. HINES, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CASE NO. 1:10-cv-00634-DML-RLY |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

# Entry on Judicial Review

Plaintiff Estel J. Hines applied for Disability Insurance Benefits (DIB) on July 12, 2006, alleging that he had been disabled since October 30, 1990, because of problems with his heart, including symptoms of shortness of breath, dizziness and fainting spells, sweating, and fatigue. (*See* R. 118). This was the second time Mr. Hines had applied for benefits. He first applied on December 15, 1990, and when his application was denied at the initial level of review on February 25, 1991, Mr. Hines did not pursue further administrative review of the initial decision. Mr. Hines met the insured status requirements through December 31, 1996; therefore, to qualify for DIB, Mr. Hines must have been disabled on or before December 31, 1996.

Acting for the Commissioner of the Social Security Administration, an administrative law judge ("ALJ") held a hearing on February 10, 2009, and issued a decision on May 26, 2009, finding that Mr. Hines was not disabled before December 31, 1996, because he was capable of performing his past relevant work as a computer programmer and systems designer. The National Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision for

the Commissioner final. Mr. Hines filed this civil action for judicial review, under 42 U.S.C. § 405(g).[1]

Mr. Hines challenges the ALJ's findings at step four. He argues that the ALJ's decision regarding Mr. Hines's residual functional capacity is not supported by substantial evidence because the ALJ improperly discounted the opinion of Mr. Hines's treating physician regarding Mr. Hines's physical limitations, unfairly and erroneously evaluated Mr. Hines's credibility, and erroneously evaluated Mr. Hines's past work.

For the reasons discussed below, the Commissioner's decision is REMANDED for reconsideration consistent with this opinion.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Mr. Hines was disabled before his date last insured ("DLI") if his impairments were of such severity that he was not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he could not engage in any other kind of substantial gainful work that existed in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

2

Step one asks if the claimant is (or was as of his DLI) engaged in substantial gainful activity; if so, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and

functional capacity. 20 C.F.R. § 416.960(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## The ALJ's Findings

Mr. Hines was born in September 1942, was 48 years old at the time of the alleged onset of disability, and 54 years old as of his DLI. At step one, the ALJ found that Mr. Hines had not engaged in substantial gainful activity between the alleged onset date of October 30, 1990, through his DLI of December 31, 1996. (R. 17). Mr. Hines satisfied step two and, as of his DLI, suffered from the severe impairments of dilated cardiomyopathy with stable chronic atrial fibrillation and obesity. (*Id.*). At step three, the ALJ found that Mr. Hines's impairments, alone or in combination, did not meet or medically equal one of the listed impairments. (R. 18). The ALJ decided that Mr. Hines was capable of performing a full range of sedentary work. (R. 18-19). At step four, she determined that Mr. Hines's past relevant work was appropriately categorized as a computer programmer, described in the Dictionary of Occupational Titles (DOT) at #030.162-010, and as a systems designer, described in the DOT at #030.162-022. (R. 20). The ALJ found that these jobs are skilled and require a sedentary level of exertion consistent with Mr. Hines's RFC. (*Id.*). Accordingly, the ALJ decided that Mr. Hines was not disabled because, as of his DLI, he could perform his past relevant work. The ALJ did not reach step five. (*Id.*).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard

4

demands that there be more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). *See also Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court reviews record as a whole, but does not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). If an ALJ concludes that benefits should be denied, she must have first built an accurate, logical bridge between the evidence and her conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in her decision, but she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

Mr. Hines argues that the ALJ's decision should be reversed and remanded for two main reasons. First, he contends that the ALJ's RFC is flawed because (a) the ALJ failed to give controlling weight to the opinion of Mr. Hines's treating physician, Dr. J. W. Whitaker, regarding Mr. Hines's ability to work and (b) the ALJ failed to credit Mr. Hines's testimony regarding his limitations without providing any cogent reasons for having done so. Second, he contends that because his past work as a computer programmer and systems analyst are remote in time and required tasks that Mr. Hines could not perform as of his DLI, the ALJ erred in deciding that this work qualified as past relevant work that Mr. Hines capably could perform.

### A.     The ALJ did not fully evaluate Dr. Whitaker's opinion.

Dr. J. W. Whitaker is Mr. Hines's treating cardiologist who treated him for nearly 20 years. Dr. Whitaker wrote a letter addressed to the Social Security Division dated November 20, 1990, expressing his opinion that Mr. Hines was unable to "continue with gainful employment." (R. 217). The letter traces Dr. Whitaker's treatment of Mr. Hines, which began when he first saw him "in 1988 with overt congestive heart failure and rapid atrial fibrillation." (R. 217).[2] At that time, Mr. Hines was prescribed medication to improve his symptoms and he underwent cardiac catheterization. An attempt was made at "cardioversion" (the use of electrical shock to restore to normal sinus rhythm), but it was not successful. (*Id.*). Dr. Whitaker explained that

---

[2]     Congestive heart failure is the heart's inability to pump enough blood to meet the body's needs. http://www.mayoclinic.com/health/heart-failure/D500061 (last visited August 19, 2011). Atrial fibrillation is "the most common irregular heart rhythm that starts in the atria. Instead of the SA node (sinus node) directing the electrical rhythm [which is called "normal sinus rhythm" and is how the normal heart beats], many different impulses rapidly fire at once, causing a very fast, chaotic rhythm in the atria. Because the electrical impulses are so fast and chaotic, the atria cannot contract and/or squeeze blood effectively into the ventricle." http://my.clevelandclinic.org/heart/atrial_fibrillation/afb.aspx (last visited August 19, 2011).

Mr. Hines remained in chronic atrial fibrillation and "gradually had worsening exercise intolerance and increasing fatigue to the point where it significantly disrupted his day to day activity." (*Id.*). Dr. Whitaker concluded that Mr. Hines was no longer able to work "without significant fatigue for any protracted period of time." In addition to significant limitations in the duration of work, Dr. Whitaker opined that Mr. Hines was limited in the extent of his work load, and "[a]t present any workload in excess of six mets[3] causes significant fatigue and dyspnea." (*Id.*). Dr. Whitaker's treatment note from a month earlier, in October 1990, stated that Mr. Hines was having difficulty keeping up with his day-to-day activities and had increasing amounts of fatigue and dyspnea. (R. 219). Dr. Whitaker stated his belief that Mr. Hines was "becoming more & more disabled" and "encouraged that he initiate disability proceedings." (*Id.*).

The ALJ rejected Dr. Whitaker's opinions that Mr. Hines was "disabled" or "unable to work" because it is the Commissioner's prerogative to decide whether a claimant is disabled or not able to work. (*See* R. 19). The SSA's policy rules teach that an ALJ is *not* bound to give controlling weight or any special significance to a treating physician's opinion on these issues because they are ones that are reserved to the Commissioner. SSR 96-5p "Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner. The ALJ still, however, must carefully evaluate the opinion of the treating physician on issues reserved to the Commissioner in light of all the evidence in the record and determine the extent to which the opinion is supported by the record. *Id.* Furthermore, if opinions are from treating

---

[3] MET stands for "metabolic equivalent of task," and is a unit of measurement to "compare the working metabolic rate (the amount of oxygen used by the body during physical activity) to the resting metabolic rate. It is a way to compare the amount of exertion required for different activities. At rest, the body uses one MET for basic functions such as breathing. . . . Moderate physical activity requires 3 to 6 METs. Vigorous or high-intensity physical activity requires more than 6 METS."
http://familyfitness.about.com/od/fitnessvocabularyterms/metabolicequivalent.htm (last visited August 23, 2011).

7

physicians and the bases for the opinions are not clear, the ALJ should make "every reasonable effort to recontact such [treating medical] sources for clarification when they provide opinions on issues reserved to the Commissioner. . . ." *Id.*

Dr. Whitaker's opinion regarding Mr. Hines's inability to work was grounded in his view that Mr. Hines's cardiovascular difficulties left him significantly fatigued, affecting both the "duration" of work for any "protracted period of time" and "extent of work load" that Mr. Hines could endure. Dr. Whitaker defined "work load" by reference to an objective measurement, stating that "any workload in excess of six mets causes significant fatigue and dyspnea." (R. 217). The ALJ credited Dr. Whitaker's opinion that a workload in excess of six mets was beyond Mr. Hines's capabilities and found that "an ability to exercise to just one to three METS is consistent with the sedentary level of exertion." (R. 19). Mr. Hines does not challenge this aspect of the ALJ's evaluation of Dr. Whitaker's opinion but contends that the ALJ ignored Dr. Whitaker's opinion that Mr. Hines's impairment limited the "duration" that Mr. Hines could work. The court agrees.

The ALJ should have, but failed to, mention or evaluate Dr. Whitaker's view that Mr. Hines's fatigue "significantly disrupted his day to day activity," limiting "the duration of his work" for any "protracted period of time." *See* SSR 96-5p (requiring careful evaluation of opinion of treating physician and an effort to contact the physician if necessary to clarify bases for opinion). It also appears from the ALJ's description of Dr. Whitaker's treatment notes from 1990 through 1996 that the ALJ may have minimized Mr. Hines's cardiac problems in a manner inconsistent with the contents of the treatment notes. The ALJ described one of Dr. Whitaker's treatment notes, dated November 21, 1990, as indicating that Mr. Hines's inability to work was caused by psychological stress in being unable to find his lost brother *rather than* by physical

8

impairments. (R. 19). The court reads the note to indicate that Mr. Hines's psychological stress was caused by *both* physical impairments and an inability to find his brother. The treatment note reads: "He is under quite a bit of psychological stress in terms of diminishing work *in* trying to find his lost brother." (italics added for emphasis). But the italicized "in" is almost certainly a typographical error and should be "and"—otherwise the note would make little sense grammatically or contextually. The date of the note coincides with Mr. Hines's cessation of his business based on Dr. Whitaker's advice that working was making Mr. Hines sicker and sicker. (*See* R. 47, R. 50). But even if Mr. Hines's psychological stress was not the result of his decision to stop working to save his health, the ALJ's description of Dr. Whitaker's records in general gives the impression that the ALJ read the treatment records with a jaded eye.

The ALJ summarized the treatment notes as generally describing Mr. Hines's condition as stable, routinely noting that Mr. Hines did not voice "substantial complaints" and that Dr. Whitaker "merely recommend[ed]" a follow-up examination for 9-12 months later. (R. 19). It is not clear whether the ALJ thought these notes made Dr. Whitaker's opinion faulty or that the notes caused her to conclude that Mr. Hines was not suffering as much as he claimed. The former is doubtful given that the ALJ gave "greatest weight" to Dr. Whitaker's view that physical activity in excess of 6 METs was beyond Mr. Hines's abilities.[4] The latter possibility is not plausible either, because Dr. Whitaker's notes are not inconsistent with Mr. Hines's descriptions of his limitations or Dr. Whitaker's opinion regarding the duration of work Mr. Hines is able to perform. Mr. Hines stopped working in late 1990 and did not work thereafter.

---

[4] The Commissioner argues that the ALJ "determined that Dr. Whitaker's opinion was not entitled to significant weight because it was not well-supported by the medical evidence of record and was inconsistent with other substantial evidence in the record." (Dkt. 26 at p. 8; *see also* pp 13-14). But the ALJ did not say any such thing. In fact, she said the opposite, at least regarding Dr. Whitaker's view of Mr. Hines's work-load capacity, expressly giving it the "[g]reatest weight." (R. 19).

He testified that over this period, he significantly limited all physical activity because of fatigue. (R. 47, 50-51). It does not strike the court as unusual that an interval of 9-12 months between follow-up visits can be appropriate for a severe medical impairment that has stabilized or that a person is able to stabilize his condition and have no "substantial complaints" by stopping all physical activities (duration and work load) that exacerbate his symptoms.

Because the ALJ's decision does not address Dr. Whitaker's opinion regarding the "duration" of work Mr. Hines could tolerate, does not address whether the opinion is supported (or not) by the medical records or other evidence, and does not allow the court to trace her reasoning for ignoring this aspect of Dr. Whitaker's opinion, the ALJ must revisit her analysis in accordance with the requirements of SSR 96-5p.

**B.** **The ALJ did not make a proper evaluation of Mr. Hines's credibility.**

An ALJ is required to consider a claimant's statements about his symptoms and how they affect his daily life and ability to work, 20 C.F.R. § 404.1529(a), but she is not required to accept the claimant's statements blindly. *Rucker v. Chater,* 92 F.3d 492, 496 (7th Cir. 1996) (ALJ not required to give full credit to every statement of pain or find a claimant disabled because she does not think she can work). The ALJ must give reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers will have a fair sense of how the claimant's testimony was assessed. *See* SSR 96-7p; *Brindisi v. Barnhart,* 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making a credibility determination by articulating the reasons behind the determination). Because the ALJ evaluates credibility by questioning and evaluating a live witness, the ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008); *Luna v. Shalala,* 22 F.3d 687, 690 (7th Cir. 1994).

The ALJ found that Mr. Hines's statements about his symptoms and abilities "are not credible to the extent they are inconsistent with" the ALJ's RFC assessment. (R. 19). That conclusory finding provides no basis for determining the weight the ALJ gave to any particular testimony. In the Seventh Circuit, such boilerplate assessments of a claimant's credibility are not tolerated, and for good reason—a reviewing court is left without any fair sense of how the ALJ assessed the claimant's testimony. *See, e.g., Parker v. Astrue,* 597 F.3d 920, 921-22 (7th Cir. 2010) (criticizing ALJ boilerplate statement that claimant's statements regarding intensity, persistence, and limiting effects of symptoms were "not entirely credible," without more specific discussion of the weight ALJ gave to particular testimony).

One paragraph in the ALJ's decision summarizes Mr. Hines's (and his wife's) description of the limiting effects of his impairments:

> The claimant alleges an inability to work due to dizzy spells, weakness, sweating, fainting and exhaustion. He testified that he had an episode of congestive heart failure in 1988, but that he went back to work. He explained that his health progressively deteriorated, and that he therefore gradually reduced his work and then just closed his company. His wife related that the claimant had been very active before his heart problems in 1988, but he became more ill and gradually reduced his activities.

R. 18. But Mr. Hines also testified that he has experienced swelling in his legs since 1990, takes Lasix medication and wears special stockings to alleviate the symptoms, but that he still must elevate his legs to hip-level for 10-15 minutes at a time to keep his legs from tingling and going numb. (*See* R. 52-53). The ALJ did not address this limitation within her RFC analysis or provide any basis for disbelieving it, other than her general statement that she did not believe anything that was inconsistent with her RFC. Her failure to address this limitation, which may affect Mr. Hines's ability to do work, is a gap in the analysis that must be addressed on remand. *See* SSR 96-8p ("RFC assessment must include a discussion of why reported symptom-related

11

functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")

The ALJ stated (also in conclusory fashion) that Mr. Hines's medically determinable impairments could "reasonably be expected to cause the alleged symptoms" (*id.*), but did not provide a reason for calling into question Mr. Hines's testimony regarding the severity of the symptoms (except to the extent the ALJ determined that Mr. Hines's ability to stabilize his condition through inactivity made him not credible, a matter addressed above). The opinion does not identify any statements by Mr. Hines that are inconsistent with other evidence, does not identify any matters the ALJ believed were false, and does not identify evidence that Mr. Hines either exaggerated his symptoms or failed to comply with prescribed treatment. Indeed, with respect to Mr. Hines's testimony that money he received after the alleged onset date were proceeds from the sale of his business and not income from work activities, the ALJ found that he had "persuasively testified." (R. 17). A bridge to link the ALJ's conclusion that Mr. Hines is not credible to evidence supporting the conclusion is missing.

The Commissioner's efforts in his brief to build that bridge are inappropriate and cannot remedy shortcomings in the ALJ's analysis. *See SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947) (Agency decision is judged "solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.")

## C. The ALJ's analysis of Mr. Hines's past work is incomplete.

The ALJ's discussion of Mr. Hines's past work is contained in two paragraphs, with similar language:

> Through the date last insured, the claimant was capable of performing past relevant work as a computer programmer and systems designer. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> The claimant had the following past relevant work: Computer Programmer, which is described in the <u>Dictionary of Occupational Titles (DOT)</u>, #030.162-010, as skilled work with a sedentary level of exertion and Systems Designer, which is described in the <u>DOT</u>, #030.162-022, as skilled work with a sedentary level of exertion.

(R. 20).

The administrative record states that Mr. Hines worked as a computer programmer from 1968 to 1971 and as a systems analyst from 1971 to 1976. (R. 127). From 1976 to 1983, Mr. Hines held an information systems management job (R. 130), and from 1983 to October 1990, Mr. Hines owned a consulting company that provided computer systems design and consulting to small businesses. (R. 47-48). As chief executive officer of the company, Mr. Hines managed his ten employees, sold the company's services to customers and visited them, designed business systems, and sometimes pitched in to write computer programs. (R. 128, R. 47). He spent about half of each work day supervising his employees and providing them direction and advice. (R. 129).

Under the SSA's regulations and policy rules, past work experience is relevant "when it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity (SGA)." 20 C.F.R. § 404.1565(a). Work performed more than 15 years before a claimant's date last insured for DIB benefits "is ordinarily considered not

13

relevant." SSR 82-62. The recency requirement is designed to ensure that the skills and abilities the claimant developed from his work continue to apply in the national economy:

> Recency refers to the time which has elapsed since the work was performed. A gradual change occurs in most jobs in our national economy so that after 15 years it is no longer realistic to expect that skills (or proficiencies) and abilities acquired in those jobs continue to apply. The 15-year guide is intended to insure that remote work experience which could not reasonably be expected to be of current relevance is applied.

*Id.*

The ALJ's decision does not acknowledge that Mr. Hines last held jobs as a computer programmer or systems analyst more than 15 years before his date last insured. The decision contains no discussion that the ALJ found the work still to be "relevant" despite its remoteness in time. The decision does not reveal whether the ALJ determined that because Mr. Hines took on some systems design and programming work while CEO of his own company, the work had been performed within the 15-year cut off.

The Commissioner's defense of the ALJ's opinion regarding Mr. Hines's ability to do his past work violates *Chenery* principles. The Commissioner argues strenuously that there are grounds for upholding a finding by the ALJ that Mr. Hines's decades-old jobs as computer programmer and systems analyst were still relevant as of December 31, 1996 (the DLI) because there was a "continuity of skills, knowledge, and processes" between Mr. Hines's old jobs and his more recent ones. But the ALJ's decision contains no such finding and does not cite evidence that could even support such a finding. The only finding that the ALJ made about Mr. Hines's old jobs as computer programmer and systems designer was that, as performed in the national economy, they are sedentary jobs. She said nothing about the particular skills involved and nothing to justify finding that 20-year old jobs in the computer field retain their relevance in

the economy despite the significant passage of time. The court declines to attribute a course of reasoning to the ALJ that she never articulated.[5]

The court agrees with Mr. Hines that the ALJ's failure to acknowledge that Mr. Hines last worked as a computer programmer and systems designer more than 15 years before his date last insured and to analyze whether the work was still "relevant" despite its remoteness in time require remand.

## **Conclusion**

For the foregoing reasons, the court REVERSES and REMANDS the decision of the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

So ORDERED.

Date: 08/25/2011

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

[5] The two cases cited in a footnote by the Commissioner, from the Sixth and Eleventh Circuits, that contain some language suggesting an ALJ's decision at step four regarding past relevant work may be sustained so long as there is supporting evidence in the record whether or not the ALJ relied on or analyzed that evidence are readily distinguishable. In both, the courts found that the subject work was performed within the 15 year cut-off, so the presumption that the work was not relevant did not apply in the first place. But, here, the Commissioner agrees with Mr. Hines that his past work was more than 15 years old and the presumption—though it is not a bright line rule—applies. *See Smith v. Secretary of Health and Human Services,* 893 F.2d 106 (6th Cir. 1989) (ALJ could have concluded that the work was not more than 15 years old and, even so, the 15-year rule does not apply to unskilled work); *Barnes v. Sullivan,* 932 F.2d 1356 (11th Cir. 1991) (per curiam) (work was performed within 15 year period). *Cf. Waldrop v. Commissioner of Social Security,* 379 Fed. Appx. 948, 952-53 (11th Cir. 2010) (ALJ has burden to develop administrative record; without detailed description of the duties and demands of the claimant's past work, it is impossible to determine whether the claimant can still perform that work).

15

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Joseph W. Shull
jshull@joeshull.com